UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS
OF RENAISSANT LAFAYETTE LLC,

        Appellant,

    v.                                 Case No. 11-C-0172

INTERFORUM HOLDING LLC,
INTERFORUM HOLDINGS-LAFAYETTE LLC,
RENAISSANT LAFAYETTE LLC,

        Appellees.

---

DECISION AND ORDER AFFIRMING THE DECISION
OF THE BANKRUPTCY COURT AND DISMISSING APPEAL

The Official Committee of Unsecured Creditors ("Committee") appeals the December 28, 2010, Order Granting Motion to Approve Settlement Agreement Between Debtor and the Interforum Entities entered by the United States Bankruptcy Court for the Eastern District of Wisconsin. The Committee has identified two issues on appeal: (1) whether the bankruptcy court erred in approving the settlement; and (2) whether the bankruptcy court erred in allowing jurisdiction to be waived or agreed to and in finding that it had jurisdiction to enter the order pursuant to 28 U.S.C. § 1334. For the reasons set forth below, the bankruptcy court's order approving the settlement agreement will be affirmed and the appeal will be dismissed.

STANDARD OF REVIEW

Federal district courts have jurisdiction over bankruptcy appeals pursuant to 28 U.S.C. § 158(a)(1). On appeal from the bankruptcy court, the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand the case

for further proceedings. Fed. R. Bankr. P. 8013. The reviewing court will not disturb a bankruptcy court's approval of a settlement unless such approval constituted an abuse of discretion. *In re Holly Marine Towing, Inc.*, 669 F.3d 796, 799 (7th Cir. 2012). This standard is highly deferential because the bankruptcy court is in the best position to consider the reasonableness of a particular settlement. *Id.* While questions of fact are reviewed for clear error, legal conclusions are reviewed de novo. *Id.; see also In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009).

STATEMENT OF FACTS

Renaissant Lafayette LLC is a Wisconsin limited liability company. (Doc. 1-21 at 3.) Interforum Holdings, Inc., was a Class A Member of Renaissant Lafayette LLC, holding a 12.5% membership interest, and Interforum Holdings-Lafayette LLC (collectively "Interforum") was a Class B Member holding a 37.5% membership interest. (*Id.*) The remaining 50% interest in Renaissant Lafayette LLC was held by Renaissant Development Group LLC. (*Id.*)

By letter dated February 13, 2009, Interforum Holdings-Lafayette LLC informed Warren Barr, President of Renaissant Development Group LLC, that Interforum Holdings-Lafayette LLC elected to cease being a member of Renaissant Lafayette LLC pursuant to paragraph 5 of the Investment Agreement and demanded the full amount being held in an escrow account. (Doc. 1-24 at 18.) Exhibits on file indicate that on February 17, 2009, the proceeds of a certificate of deposit, $535,632.60, were transferred into Renaissant Lafayette LLC's checking account and a $500,000 cashier's check was made payable to Interforum Holdings-Lafayette LLC. (Doc. 1-26 at 2, 12.)

2

On December 11, 2009, Barr signed a resolution as the sole Manager and Member of Renaissant Lafayette LLC regarding its decision to file a petition under Chapter 11 of Title 11 of the United States Bankruptcy Code. (Docs. 1-5, 1-21.) Interforum did not sign the petition. (*Id.*) Several weeks later, Renaissant Lafayette LLC filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. *In re Renaissant Lafayette LLC*, Case No. 09-38166 (Doc. 1-5.)

On October 1, 2010, Renaissant Development Group LLC filed a Motion for Entry of (A) an Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. §§ 105(a) and 363; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (III) Granting Related Relief; and (B) an Order (I) Establishing Sale Procedures; (II) Approving Form of Asset Purchase Agreement; (III) Scheduling a Sale Hearing in Connection with the Sale of the Debtor's Assets Pursuant to 11 U.S.C. §§ 105(a), 363, and 365; (IV) Setting Certain Dates and Deadlines in Connection Therewith; and (V) Granting Related Relief. ("Sales Procedure Motion")(Docs. 1-14, 1-16.) As described in the Amended Sale Procedures Motion, Amalgamated Bank agreed to act as stalking horse bidder in an auction for the Debtor's assets with a credit bid of $55,000,000 pursuant to the Asset Purchase Agreement attached as an exhibit. (Doc. 1-16.)

On October 25, 2010, Interforum filed an Objection and Response to Renaissant Lafayette LLC's Motion for Entry of an Order based on a combined 50% interest in Renaissant Lafayette LLC. (Doc. 1-17 at 1.) Interforum argued that Renaissant Lafayette LLC failed to list Interforum as Equity Security Holders and that the January 25, 2010,

3

State of Financial Affairs erroneously states that Interforum withdrew as members of Renaissant Lafayette LLC. (*Id.* at 2.) In addition, Interforum maintained that it had not received notice of any proceedings during the pendency of the Chapter 11 case and had not consented to the commencement of the case. (*Id.*) Interforum further adopted the Objection and Response of the Unsecured Creditors Committee to the Sale motion, which focused on the distribution of a carve-out. (*Id.*)

The October 27, 2010, minutes from the hearing on the Amended Sales Procedure Motion summarizes Interforum Holdings' Objection based on the alleged ownership interest and Renaissant Lafayette LLC's failure to provide it with notice of the Chapter 11 filing. (Doc. 1-18 at 2.) In addition, Renaissant Lafayette LLC's counsel provided the February 13, 2009, letter indicating that Interforum Holdings-Lafayette LLC intended to withdraw as one of its members.(*Id.*) While counsel for Interforum Holdings-Lafayette LLC was not prepared to respond to the letter, he argued that there was no evidence that Interforum Holdings-Lafayette had been divested of its ownership interest. (*Id.*) In response, the bankruptcy court indicated that to the extent that Interforum was claiming that Renaissant Lafayette LLC needed Interforum's approval to file the petition or to sell, Interforum must take up the issues with Renaissant Lafayette LLC. (*Id.* at 3.)

Another hearing was held on November 8, 2010, regarding the proposed carve-out and an emergency motion to adjust dates. (Doc. 1-20.) Counsel for Renaissant Lafayette LLC noted that Interforum had filed an objection to the October 1 motion arguing that it was a part owner and that the court needed to set a deadline for Interforum to object to the sale on that ground. (Doc. 1-20 at 3.) Interforum's counsel stated that Interforum would object

4

to the sale on the same grounds and that a week was insufficient time to prepare for a hearing.  (*Id.*; Doc. 1-37 at 19-26.)  After further discussion, the court gave Interforum until November 19, 2010, to object in writing to the sale on corporate ownership/governance grounds and set a deadline of Wednesday, November 24, 2010, at noon for any interested party to file a response.  (Doc. 1-20 at 3.)  The court also granted the emergency motion to adjust dates and scheduled a hearing for the approval of the sale for Thursday, December 23, 2010.  (*Id.*)

On November 19, 2010, Interforum filed a Motion to Dismiss Bankruptcy Petition of Renaissant Lafayette LLC on the grounds that the Manager was not authorized to file the Chapter 11 bankruptcy petition on behalf of Renaissant Lafayette LLC.  (Doc. 1-21.)  Renaissant Lafayette LLC and Amalgamated Bank objected to Interforum's arguments that the bankruptcy must be dismissed.  The bankruptcy court scheduled an evidentiary hearing for December 7, 2010.

On December 7, 2000, just prior to the evidentiary hearing, Renaissant Lafayette LLC, Amalgamated Bank, and Interforum reached a settlement allowing Interforum Holdings-Lafayette LLC to retain the $500,000 transfer from a joint instruction certificate of deposit maintained by Renaissant Lafayette LLC pursuant to an Equity Agreement which provided that Interforum ceased to be a member of Renaissant Lafayette LLC as of February 13, 2009.  As a result, Interforum had no rights or interest in Renaissant Lafayette LLC after that date and withdrew its Motion to Dismiss and objection to sale, among other things.  In the Motion to Approve Settlement Agreement Between Debtor and the Interforum Entities, Renaissant Lafayette LLC stated that it believed that Interforum had withdrawn as a member of Renaissant Lafayette LLC after receiving the $500,000 in

5

February of 2009. (Doc. 1-27 at 2.) In addition, Renaissant Lafayette LLC argued that the settlement was within the range of reasonableness, citing the cost of continued litigation which would jeopardize the sale process and delay resolution. Renaissant Lafayette LLC also cited a significant reduction in legal expenses and the final resolution of all claims. (Doc. 1-27 at 7.)

The Official Unsecured Creditor's Committee filed an objection to the Motion to Approve Settlement Agreement Between the Debtor and the Interforum Entities on December 20, 2010. (Doc. 1-29.) The Committee argued that there was a "lack of legal and factual justification for the compromise, specifically for the release of a potential avoidance claim of $500,000." (Doc. 1-29 at 1.) Continuing, the Committee asserted that Renaissant Lafayette LLC had not "made a clear showing that releasing the claim is in the best interest of the estate." (*Id.* at 2.) Notably, the Committee did not join or reference Interforum's previously filed Motion to Dismiss or otherwise challenge the jurisdiction of the bankruptcy court.

Amalgamated Bank, the largest unsecured creditor in the case with $48 million, filed a response to the objections of the Committee stating that the "probability of avoiding a $500,000 transfer to the Interforum Entities as a preferential transfer is low" and mentioning that the monies had been held in escrow on behalf of Interforum since 2007. (Doc. 1-30 at 2.) Amalgamated Bank further argued that the benefit to the estate achieved through settlement far outweighed the benefits of any potential avoidance action and its attendant costs. (*Id.* at 3.)

The court held a hearing on December 23, 2010, at which time counsel for Renaissant Lafayette LLC argued that the $500,000 did not belong to Renaissant Lafayette

6

LLC or to the estate but to the creditors who had placed it in escrow. (Doc. 1-31 at 2.) As stated in the minutes:

> Counsel for the Committee argued that the motions did not provide a detailed analysis about whether the funds were or were not in fact property of the estate. He argued that the Court did not know whether the funds were retained in a true escrow account, whether they were commingled, or whether any of the escrow creditors had breached their respective agreements, such that they were not entitled to return of the funds. He indicated that he was performing his fiduciary duty as counsel for the Court-appointed Committee for the unsecured creditors, in an attempt to maximize the assets of the state. He added that the Court should not rush to approve these motions when the funds had sat untouched for a year.

(*Id.*) With respect to Interforum, the court commented on Interforum's motion seeking dismissal because Renaissant Lafayette LLC did not have the authority to file the Chapter 11 petition. (*Id.* at 3.) Counsel for Renaissant Lafayette LLC explained that, as part of the settlement, Interforum would be deemed to have withdrawn from ownership as of February 2009 and that Interforum would not have standing in the Chapter 11 case because all claims of Interforum would be released. (*Id.*) Again, counsel for the Committee contended that the agreement effectively released a preference of $500,000 but did not question the court's jurisdiction. (*Id.* at 4.)

The bankruptcy court granted the Motion to Approve Settlement. (*Id.*) In its order, the court found that it had jurisdiction pursuant to 28 U.S.C. § 1334, that it was a core proceeding pursuant to 28 U.S.C. § 157(b), and that the settlement agreement was fair, reasonable and in the best interest of the estate and creditors. (Doc. 1-27.)

## LEGAL ANALYSIS

The Committee maintains that the bankruptcy court abused its discretion in granting the Motion to Approve Settlement. Under Bankruptcy Rule 9019(a), the bankruptcy court

7

may approve a compromise or settlement "[o]n motion by the trustee and after notice and a hearing." In conducting a hearing under Rule 9019(a), the bankruptcy court is to determine whether the proposed compromise is in the best interests of the bankruptcy estate, *In re Am. Reserve Corp.*, 841 F.2d 159, 161 (7th Cir.1987). Central to the bankruptcy judge's determination is a comparison of the settlement's terms with the litigation's probable costs and probable benefits. *Id.* Among the factors the bankruptcy judge should consider in her analysis are the litigation's probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay (including the possibility that disapproving the settlement will cause wasting of assets). *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007)(citing *In re Am. Reserve Corp.*, 841 F.2d at 161).

The Committee argues that the order at issue involves "the fundamental question of whether the bankruptcy court ever had jurisdiction to hear any matters before it." (Doc. 3 at 12.) In making this argument, the Committee appears to be adopting the arguments that were raised but later withdrawn by Interforum regarding corporate governance. Notably, these arguments were never adopted or otherwise asserted by the Committee during the pendency of the proceedings. Rather, the Committee focused on the potential avoidance claim and the carve-out distribution. Underlying both arguments is the assumption that the court was acting within its jurisdiction. After all, if the petition was unauthorized or filed improperly, there would be no bankruptcy proceeding and no occasion to seek recovery of the $500,000 as a preferential transfer, pursuant to 11 U.S.C. § 547.

8

During the December 23, 2010, hearing on the Motion to Approve Settlement Agreement, the Committee maintained that it "has no issue with a resolution of this matter, if they want to withdraw their motion and the like to dismiss" but that the release of the potential preference claim of $500,000 was "really going beyond the envelope." (Doc. 1-35 at 40.) The argument focused on the potential preference rather than any jurisdictional issue. (*Id.* at 40-46.) Indeed, at page 42 of the transcript, the Committee argued:

> The Debtor has asserted to you in open court that they don't give much credence, if any, to the claims of [ ] Interforum. The bank has told you that is also their analysis and tells you in papers that they're confident that they can prevail. Well, if that's the case, Your Honor, then let them prevail and have this motion dismissed – struck and let's not give up a $500,000 potential preference claim.

(Doc. 1-35 at 43.) Put simply, on appeal, the arguments advanced by the Committee are not the arguments it made during the proceedings below. At no time did the Committee challenge the authority of Renaissant Lafayette LLC to initiate the case.

Moreover, the bankruptcy court concluded unequivocally that it had jurisdiction with respect to the case and the settlement agreement pursuant to 28 U.S.C. § 1334. (Doc. 1-32 at 1.) Assuming for the sake of argument on appeal that the petition was not properly authorized, Interforum was the only party objecting to the filing of the Chapter 11 and had the ability to withdraw its Motion to Dismiss and thereby "ratify" the filing through its participation in the settlement. Whether the voluntary corporate bankruptcy petition was properly authorized is a matter of state law that it is not addressed by the Bankruptcy Code. *Price v. Gurney*, 324 U.S. 100, 65 S. Ct. 513, 89 L. Ed. 776 (1945).

The Supreme Court in *Price* held that a federal bankruptcy court has no power to entertain a voluntary petition for bankruptcy filed on behalf of a corporation by those

9

without authority under local law. *Id.* at 106. Nevertheless, an unauthorized filing of a voluntary petition in bankruptcy on behalf of a corporation may be ratified in appropriate circumstances by ensuring conduct of persons with power to have authorized it originally. *Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997). It is well settled that a corporation or other principal may ratify and thereby render binding upon it the originally unauthorized acts of its officers or other agents. *See, e.g., Lyons v. Menominee Enters.*, 67 Wis.2d 504, 510, 227 N.W.2d 108, 112 (1975) (a corporation may ratify acts of president and make those acts just as binding as if the power were formally conferred).

Here, Interforum waited five months after learning about the Chapter 11 before seeking dismissal. Then, after filing its Motion to Dismiss, Interforum agreed to withdraw it. Thus, if Interforum was a member of Renaissant Lafayette LLC when the Chapter 11 petition was filed, this constitutes an express ratification of the filing of the petition. *See generally In re Dearborn Process Serv. Inc.*, 149 B.R. 872, 879 (Bankr. N.D. Ill. 1993) (finding that approval by the debtor's current board of directors and acquiescence in the bankruptcy filing moots any defect that once existed). Hence, on the face of the petition as to which all members of Renaissant Lafayette LLC supported, the bankruptcy court could and did find that it had subject matter jurisdiction. Perhaps that is the reason that counsel for the Committee stated on the record that it did not contest Interforum's ability to withdraw the Motion to Dismiss. (Doc. 1-35 at 40.)

Correspondingly, as noted earlier, the settlement agreement executed by Renaissant Lafayette LLC and Interforum on December 7, 2010, states that Interforum had

no interest in the LLC after February 13, 2009. It follows that the Chapter 11 was filed properly and Interforum did not have standing to challenge it.

Turning to the Committee's argument regarding the bankruptcy court's failure to undertake a comprehensive analysis of all relevant factors, the court is satisfied that all appropriate factors were considered. The Committee has asserted that the bankruptcy court failed to address that (1) Renaissant Lafayette LLC made a transfer of $500,000 to an insider within the time period prior to the bankruptcy filing which may give rise to an avoidance action (2) that Renaissant Lafayette LLC did not make full disclosure as to the viability of litigation or make any estimate as to its costs and (3) that there was no showing that releasing the potential preference of $500,000 is in the best interest of the estate.

To the contrary, the bankruptcy court discussed these factors on the record during the December 23, 2010, hearing. The court first rejected any assertion that the compromise was a way of "tossing away the potential to recover a $500,000 preference, if in fact it – it was a preference, in spite of the fact that there is no possibility that Interforum could possibly prevail on any of its claims." (Doc. 1-35 at 66.) The court then discussed Renaissant Lafayette LLC's arguments regarding the investigation that was conducted regarding whether the $500,000 transfer constituted a preference or fraudulent conveyance. (*Id.* at 67.) After acknowledging that the Interforum motion could have potentially brought the case to a "screeching halt," the court found the settlement did not fall "outside of the realm of reasonableness." (*Id.* at 68.)

As part of this analysis, the court considered the cost and time spent on the litigation and the potential expense of litigating Interforum's claims. (*Id.*) Moreover, in acknowledging the Committee's concerns regarding a possible $500,000 claim, the court

11

weighed the costs of litigating that claim and the reality of the distribution scheme outlined by the attorneys. (*Id.* at 69.) Amalgamated Bank, which joined the settlement, would receive 96% of any proceeds whereas the remaining unsecured creditors would only recover 4%. (*Id.* at 48-49.) If $500,000 were recovered, that would translate into $20,000 for unsecured creditors other than Amalgamated Bank. (*Id.*) It is reasonable to assume that if the settlement was not permitted and the Motion to Dismiss was litigated and denied, the costs of litigation would total at least $20,000. Alternatively, if Interforum prevailed on its Motion to Dismiss, there would be no recovery available to the unsecured creditors. Finally, as the court noted, there was the reality of stalling or dismissing the Chapter 11 case. (*Id.*) As stated in the Order, there were sufficient reasons for the bankruptcy court to conclude that the agreement was in the best interest of the estate. (Doc. I-32 at 1.) Hence, on this record, there was no abuse of discretion by the bankruptcy court respecting the settlement agreement at issue. Now, therefore,

IT IS ORDERED that the December 28, 2010, Order Granting Motion to Approve Settlement Agreement Between Debtor and the Interforum Entities is affirmed.

IT IS FURTHER ORDERED that this appeal is dismissed.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

12